UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

March 12, 2012

Stephen F. Shea, Esq.
Elkind & Shea
801 Roeder Road, Suite 550
Silver Spring, MD   20910

Alex S. Gordon, AUSA
36 South Charles Street
4th Floor
Baltimore, MD   21201

**Re: Jacqueline Richardson o/b/o J.D. v. Michael J. Astrue, Commissioner of Social Security, PWG-09-93**

Dear Counsel:

Pending before this Court, by consent, are the parties' Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Jacqueline Richardson's claim on behalf of J.D. for Childhood Supplemental Security Income ("SSI"). (ECF Nos. 8,22,31). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

Jacqueline Richardson (hereinafter referred to as "Ms. Richardson or "Claimant)", on behalf of her grandson, "J.D.", applied for childhood SSI on February 22, 2005, alleging that J.D. was disabled due to attention deficit hyperactivity disorder ("ADHD"), a learning disorder, and behavioral problems. (Tr. 12, 64, 68, 73). The claim was denied initially, and upon reconsideration. (Tr. 43-44). After a hearing on June 27, 2007, held before Administrative Law Judge ("ALJ"), the Honorable William B. Harmon, the ALJ evaluated J.D.'s claim for children's SSI benefits using the three-step sequential process set forth

1

in 20 C.F.R. § 416.924 and issued a decision dated September 21, 2007.

The ALJ's findings at step one and step two[1] were favorable to Claimant. (Tr. 15). At step three however the ALJ found that J.D. did not have an impairment or combination of impairments that met, or equaled in severity, any listed impairment.(Tr. Id). Additionally, the ALJ determined that J.D. did not have an impairment or combination of impairments that were functionally equivalent to any listed impairment. (Tr. 16-29). Therefore, the ALJ determined that J.D. was not disabled for purposes of children's SSI benefits. (Tr. 12-29). On November 18, 2008, the Appeals Council denied Claimant's request for review, making her case ready for review. (Tr. 5-7).

The Claimant argues that the ALJ erred by failing to recontact J.D.'s treating physicians for additional medical records and that the ALJ should have asked additional questions at the hearing regarding the extent of the child's limitations due to ADHD. Claimant argues that these failures establish that the Commissioner's final decision was not supported by substantial evidence. *See* Plaintiff's Memorandum, pp. 4-7. For the reasons that follow, I disagree.

The ALJ found that J.D.'s ADHD was a "severe" impairment as defined in 20 C.F.R. § 416.924. However the ALJ also concluded that these impairments did not "meet, medically equal, or functionally equal" the impairments in Appendix 1, Subpart P, Regulations No. 4 at step three of the sequential evaluation.

Claimant argues that pursuant to 20 C.F.R. § §416.912(e), the ALJ was required to seek additional evidence from the physicians who treated J.D. before rejecting their opinions that J.D. had extreme functional limitations, and therefore, would functionally equal a Listing. In support of this claim, she also states that the ALJ was required, but failed, to ask any additional questions regarding the functional domains when Claimant testified at the hearing[2].

The Claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The ALJ has a duty to explore

---

[1] The ALJ found that only J.D.'s ADHD was a severe impairment. (Tr 15). Claimant does not challenge the ALJ's finding at step two.

[2] Claimant was represented by counsel at the hearing.(Tr. 310).

2

all relevant facts and inquire into the issues necessary for the development of a complete record. *Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986).  This duty **may** include recontacting a medical source if his report "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 416.912(e)(1)(2007)(emphasis added).  However, this duty arises only when the evidence from the treating physician is inadequate to make a disability determination.  20 C.F.R. § 416.912(e).

   I find that there was no such inadequacy present in this case. After careful review of the record, the undersigned fails to find that the reports submitted by J.D.'s treating sources -- Dr. Quintero-Howard, Dr. Becker and Dr. Parks-- were in need of clarification and/or supplementation.(Tr. 18-21, 271-290). In explaining the reasons for discrediting Dr. Howard's statement that J.D. had extreme limitations in essentially all areas of functioning, the ALJ noted that J.D.'s pediatric records did not support these extreme limitations. (Tr. 22).  I agree. For example, on October 3, 2006, Dr. Howard noted that J.D. was calmer, but noted JD still can be fidgety. (Tr. 276). Furthermore, Dr. Becker noted in September 2006 that J.D.'s behavior improved when taking his Rispideral as prescribed, and that J.D. was exhibiting appropriate behavior at school. (Tr. 19, 260).  The ALJ also considered the records from J.D.'s teachers in his pre-kindergarten and Head Start day care programs. (Tr. 21).  J.D.'s teacher noted he had done a "remarkable job listening and following directions." (Tr. 116). This evidence was adequately discussed by the ALJ.  The ALJ also explained his reasons for affording the various physicians opinions variable weight. (Tr. 21-26).  J.D.'s medical and school records were all part of the record and there is no evidence that there was difficulty in obtaining the records, or that they were incomplete.

   Nor am I persuaded by Claimant's argument that the ALJ failed to properly inquire about the extent of J.D.'S alleged limitations at the hearing. After review of the record, it appears the ALJ had sufficient evidence regarding J.D.'s alleged behavior.  J.D.'s grandmother testified about his behavioral issues, and what she doing to cope with it.  This testimony included the types of treatment he received, including therapy and various medications. J.D.'s grandmother also discussed his daily activities. (Tr. 320-325)  In sum, the ALJ was not required to order any additional examinations or reports and his

decision is supported by substantial evidence and the evidence in the record supports the ALJ's determinations.

Claimant also argues that the ALJ ignored key evidence in finding that J.D. had "less than marked limitations" in the areas of attending and completing tasks and caring for yourself, which are two of the six domains of functioning.[1] Specifically, she contends that in finding that J.D. had less than marked limitations in the area of "attending and completing tasks" the ALJ should have discussed the reports from the evaluators at the Buffalo Hearing and Speech Center. (Tr. 191-200). However, these reports were discussed by the ALJ in his decision, and were they accorded weight as other source evaluators. (Tr. 18-22). It is also noted that these records were completed when J.D. was only two years old, and the time period covered was from November 2004 through March 2005. As such, this dated information was properly considered by the ALJ along with the other evidence relative to J.D.'s condition.

Further, there is substantial evidence to support the ALJ's finding that the Claimant had "less than marked limitations" in this domain. First and foremost, J.D.'s school records from 2007 were appropriately considered by the ALJ. These records are certainly relevant and, in this case, reflect improvement in J.D.'s attention skills. *See* 20 CFR §416.926a(a)(2)). For example, in the attending and completing tasks, the ALJ discussed J.D.'s teachers' reports that he made great improvement in the 2006-2007 school year with listening and following directions, a factor which, according to the Regulation, must be considered by the ALJ and as such was properly considered in this case. (Tr. 116). This evidence supports the ALJ's finding that J.D. had less than marked limitations in the domain of attending to and completing tasks.

Further, contrary to what Claimant argues, when assessing the domain of "caring for yourself" the ALJ did not ignore evidence that J.D. was unable to maintain self-control. Rather,

---

[1] Functional equivalence is determined by rating a child's abilities with respect to six "domains":1) Acquiring and Using Information; 2)Attending and Completing Tasks; 3)Interacting and Relating Well With Others; 4)Moving About and Manipulating Objects; 5)Caring for Yourself; and 6)Health and Physical Well-Being. Disability is established if the child has an "extreme" degree of limitation in one area of functioning or "marked" limitation in two areas. *See* 20 C.F.R. § 416.926a.

the ALJ summarized all the reports and discussed them in his decision. (Tr. 14, 16).  Claimant's rationale fails to recognize that the various reports, and most tellingly the more recent evidence--from J.D.'s teachers – supports the finding that J.D. had improved and that he now gets along well with the other children. (Tr. 116)  For example in April 2006, the IEP team working on J.D.'s file stated that J.D. had met all of his goals and recommended that occupational therapy be discontinued.  (Tr. 115).

    In sum, there is no basis to find that the ALJ failed to develop the record in violation of the Regulations.  Thus, for the reasons given, this Court GRANTS the Commissioner's Motion for Summary Judgment and DENIES Plaintiff's Motion.  A separate Order shall issue.

                                  Sincerely,

                              /s/
                              Paul W. Grimm
                              United States Magistrate Judge